IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL BRACEY

    Plaintiff,

v.

LANCASTER FOODS, LLC,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Civil Action No. RDB-17-1826

## **MEMORANDUM OPINION**

Plaintiff Michael Bracey ("Plaintiff" or "Bracey") brings this action against Defendant Lancaster Foods, LLC ("Defendant" or "Lancaster") alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C §§ 2601 *et seq.,* Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't § 20-266(a). (Am. Compl., ECF No. 17.) Currently pending before this Court is Defendant's Motion to Dismiss and Compel Arbitration and for Attorneys' Fees. (ECF No. 21.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss and Compel Arbitration and for Attorneys' Fees (ECF No. 21) is GRANTED.

### **BACKGROUND**

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff began working for Lancaster Foods, a wholly-owned subsidiary of Guest Services, Inc., as a

1

Yard Jockey in 2008. (ECF No. 17 at ¶ 1.) Prior to being hired by Lancaster, he was required to enter into an arbitration agreement with Guest Services (the "Agreement"). (*Id.* at ¶ 71.) Specifically, the two-page Agreement states that "[i]n return for Guest Services considering my application for employment, and in consideration of my employment with Guest Services should Guest Services choose to employ me, I consent to arbitration of any Employment Related Claim . . . .." (ECF No. 21-2) (emphasis added). The Agreement provides that in order to request arbitration, a party must submit a written Notice to Guest Services' Director of Human Resources. (*Id.*) Further, any request must be submitted "within one year of the date that the act complained of occurred . . . regardless of any longer limitations period that may be provided by any federal, state or local statute." (*Id.*) Guest Services would then cover the cost and expenses of the arbitrator, with other costs, expenses, and attorneys' fees allocated as provided by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. (*Id.*) The Agreement clearly states in capital, bold letters "THE RIGHT TO A TRIAL OR TRIAL BY JURY IS OF VALUE. YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. …" (*Id.*)

Six years after beginning his employment with Lancaster, on August 11, 2014, Bracey suffered a work related injury to his leg. (ECF No. 17 at ¶¶ 11-12.) After undergoing surgeries and physical therapy over a period of six months, Bracey finally returned to work on February 15, 2015 on light duty. (*Id.* at ¶ 15.) In late March, he began physical therapy again. (*Id.* at ¶ 16.) Subsequently, on May 19, 2015, he was discharged by his physical therapists "at the Medium Physical Demand Category limiting his ability to lift weights that

were more than 37-57 pounds." (*Id.* at ¶ 18.) The next day Bracey visited his personal physician, Dr. Greg Osgood, M.D., who determined that he had trauma arthritis in his arm and recommended that he continue to work on light duty for an additional six months. (*Id.* at ¶ 21.) On June 9, 2015, however, an independent medical examiner evaluated Bracey and released him to "full duty without restrictions." (*Id.* at ¶ 27.) Despite the independent medical examiner's determination, Bracey continued to work light duty per Dr. Osgood's recommendation. (*Id.* at ¶ 30.)

Later that month, in a letter dated June 18, 2015 and received by Bracey on June 23, 2015, Lancaster's safety manager informed Bracey that Lancaster had received the independent medical examiner's report, and unless the company heard back from him by June 26, 2015, he would be deemed resigned. (*Id.* at ¶ 32.) On June 23, Bracey contacted the Director of Human Resources, who told Bracey that he was to return to work "without restrictions or risk being resigned." (*Id.* at ¶ 33.) When he clocked in for work that day, the safety manager told him that he was no longer being accommodated for light duty. (*Id.* at ¶ 35.) Bracey responded that he was physically unable to work full duty, and his doctor had also placed him on work restrictions. (*Id.* at ¶ 36.) He also asserts that pursuant to Lancaster's grievance procedures, he asked the safety manager for an immediate meeting with the head of Human Resources and the Vice President to discuss his accommodations and light duty request. (*Id.* at ¶ 39.) However, the meeting never occurred. (*Id.* at ¶ 42.)

Bracey did not report for work the next two days. (*Id.* at ¶¶ 46-49.) Mid-day on June 26, 2015, he received another letter indicating that unless he reported to work that day on full duty, he would be deemed resigned. (*Id.* at ¶ 49.) He reported to work, but again insisted

3

that he could not work full duty. (*Id.* at ¶¶ 51-52.) On June 29, 2015, he asked for another meeting pursuant to the grievance procedures, to no avail. (*Id.* at ¶ 57.) On July 7, 2015, he received "a letter from Lancaster Food attributing the false allegations to him that he had resigned." (*Id.* at ¶ 61.)

Over five months later, on or around December 12, 2015, Bracey filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 67.) Bracey also informed the EEOC that he would like to participate in EEOC sponsored mediation with Lancaster. (*Id.* at ¶ 68.) Lancaster declined. (*Id.*) Subsequently, the EEOC was unable to conclude that there was reasonable cause to believe discrimination had occurred. Accordingly, Bracey received a Right to Sue letter from the EEOC on February 5, 2017. [1] (*Id.* at ¶ 7.)

On April 28, 2017, Plaintiff filed suit in the Circuit Court for Anne Arundel County, alleging interference and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C §§ 2601 *et seq.* (Counts I, II); discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Counts III-V); disability discrimination, wrongful discharge, failure to accommodate, and disability retaliation under the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't § 20-266(a) (Count VI-VIII); and breach of the contract of good faith and fair dealing (Count IX). On June 30, 2017, Defendant removed the action to this Court based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331.

---

[1] Although Plaintiff did not attach this Notice of Right to Sue letter, the EEOC only issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred. If the EEOC had concluded that there was reasonable cause to believe discrimination occurred, the parties would have received Letters of Determination. https://www.eeoc.gov/employers/process.cfm.

4

On July 11, 2017, Defendant filed a Motion to Dismiss and Compel Arbitration on the ground that Plaintiff Bracey had signed the Arbitration Agreement. (ECF No. 10.) Plaintiff then moved to stay the proceedings pending receiving his files from the EEOC, which this Court granted. (ECF Nos. 11, 13.) After receiving the file, on November 17, 2017, Plaintiff filed an Amended Complaint. (ECF No. 17.) On December 4, 2017, Defendant filed the instant Motion to Dismiss and Compel Arbitration. (ECF No. 21.)

## STANDARD OF REVIEW

Defendant Lancaster Foods has filed the pending Motion to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F. 3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F. 3d 553, 564 (4th Cir. 2015)). Although the Fourth Circuit has so characterized the standard of review, the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F. 3d 707, 709-10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F. 2d 1161, 1164 (5th Cir. 1992)].") Therefore, motions to compel arbitration "shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to

5

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Rose v. New Day Financial, LLC*, 816 F. Supp. 2d 245, 251-52 (D. Md. 2011).

A party seeking to apply the FAA must demonstrate four elements: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Galloway*, 819 F. 3d at 84 (quoting *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F. 3d 690, 696 n. 6 (4th Cir. 2012)). Therefore, "although arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F. 3d 636, 640 (4th Cir. 1997)). The Supreme Court has directed courts to "apply ordinary state-law principles that govern the formation of contracts" and "federal substantive law of arbitratbility." *Hill v. Peoplesoft USA, Inc.*, 412 F. 3d 540, 543 (4th Cir. 2005); *see also Heller v. TriEnergy, Inc.*, 877 F. Supp. 2d 414, 423-24 (N.D.W.V. 2012) (explaining that the "one important caveat to the reach of the FAA" is that state law governs the formation of the contract (citing *Hill*, 412 F. 3d at 543)).

## ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, provides that "[a]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal [to perform the whole or any part thereof], shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir.

6

2013). The United States Supreme Court has explained that this provision reflects "both a 'liberal federal policy favoring arbitration,' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745 (2011). Under the FAA, "[t]he party seeking to avoid arbitration bears the burden of establishing that he cannot effectively vindicate his statutory rights under the terms of an arbitration agreement." *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 287 (4th Cir. 2007) (citing *Green Tree Financial Corporation-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 522 (2000)).

Mr. Bracey does not contest that he signed the arbitration agreement or that his claims are subject to mandatory arbitration if the agreement is valid and enforceable. (ECF No. 22 at 17.) Rather, he argues that this Court should not enforce the Agreement because the one year limitations period is unconscionable. At the heart of his argument is that because he chose to file a claim with the EEOC—in an attempt to start exhausting his administrative remedies for a potential suit in *this* Court—he is now past the Agreement's one year limitation. As explained below, however, the fact that Plaintiff may *now* not be able to arbitrate his claims, an issue ultimately for the arbitrator, does not mean that the Agreement never provided an arbitral forum in which to vindicate his rights.[2]

---

[2] Plaintiff also makes passing references to the doctrines of waiver and default. As this Court previously explained in *Novic v. Midland Funding, LLC*, 271 F.Supp.3d 778 (D. Md. Sept. 21, 2017), under the FAA a party loses its right to arbitrate if it is "'in default in proceeding with such arbitration.'" *Id.* at 786 (quoting *Forrester v. Penn Lyon Homes, Inc.*, 553 F. 3d 340, 342 (4th Cir. 2009)). A party is not in default, however, unless it "so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds. Inc. v. Salus Corp.*, 779 F. 2d 974, 981 (4th Cir. 1985). Plaintiff argues that "because of Defendant's continued refusal and bad faith to meet, mediate, and[/]or arbitrate this matter . . . Lancaster Foods [is] estopped from further arbitrating this matter." (ECF No. 22 at 10.) However, Lancaster allegedly refusing Bracey's request to meet with Human Resources and the Vice President, steps not required under the Agreement, is not "utilizing the litigation machinery" necessary to find that waiver or default applies.

7

The unconscionability doctrine has both a procedural and a substantive element. Under the prevailing view and in Maryland, both must be present in order for a court to refuse to enforce a contract provision. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 602, 894 A.2d 580 (Md. 2006); *Freedman v. Comcast Corp.*, 190 Md.App. 179, 207-08, 988 A.2d 179 (Md. Ct. Spec. App. 2010); *Mould v. NJG Food Service, Inc.*, 986 F.Supp.2d 674, 678 (D. Md. 2013) (applying Maryland law and explaining that "a contract is unconscionable only if it is both procedurally and substantively unconscionable"). This Court addresses each element in turn.

### I. Procedural Unconscionability

Under Maryland law, procedural unconscionability "'deals with the process of making a contract' and 'looks much like fraud or duress.'" *Freedman*, 190 Md.App. at 208, 988 A.2d 68 (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 430, 872 A.2d 735 (Md. 2005)). "It includes concerns such as the use of 'fine print and convoluted or unclear language,' and 'deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms' and 'one party's lack of meaningful choice.'" *Id.* (quoting *Walther*, 386 Md. at 430, 872 A.2d 735)); *see also Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 602, 894 A.2d 580 (Md. 2006) (explaining that procedural unconscionability focuses on "oppression" or "surprise" due to unequal bargaining power).

Plaintiff asserts that he was offered an employment contract "on a take it or leave it basis with a promise to arbitrate all claims." (ECF No. 22 at 12.) In other words, Plaintiff argues that the agreement is a "contract of adhesion," or "one that is 'drafted unilaterally by the dominant party and then presented on a take it or leave it basis to the weaker party who

8

has no real opportunity to bargain about its terms.'" *Caire v. Conifer Value Based Care, LLC*, 982 F.Supp.2d 582, 595 (D. Md. 2013) (quoting *Walther*, 386 Md. at 430, 872 A.2d 735). As this Court stated in *Mould v. NJG Food Service Inc.*, 986 F.Supp.2d 674, 678 (D. Md. 2013), "a finding that a contract is one of adhesion is sufficient to establish procedural unconscionability and continue the inquiry into substantive unconscionability." Defendant does not dispute that had Plaintiff refused to sign the Agreement, he would not have been hired. Rather, Defendant asserts that "Plaintiff could have easily chosen not to execute the document and to seek employment as a truck driver elsewhere." (ECF No. 25 at 7-8.) In addition, the Agreement itself states that Guest Services would not even *consider* Bracey's application unless he signed the Agreement. (ECF No. 21-2 ("In return for Guest Services considering my application for employment, . . . I consent to arbitration of any Employment Related Claim . . ..").) Accordingly, this Court finds that the Agreement was a contract of adhesion and procedurally unconscionable.

As the Maryland Court of Appeals explained in *Walther*, however, "'[t]he fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable.'" 386 Md. at 746, 872 A.2d 735 (quoting *Meyer v. State Farm Fire & Cas. Co.*, 85 Md. Ap.. 83, 583 A.2d 275 (Md. Ct. Spec. App. 1990)). Rather, this Court now turns to "examine the *substance* of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable." *Id.* at 431, 872 A.2d 735 (emphasis in original).

## II. Substantive Unconscionability

Bracey argues that the arbitration agreement is substantively unconscionable because it shortens the state and federal statute of limitations for his claims to one year. Specifically,

he asserts that because he did not receive his Right to Sue Letter until February 5, 2017, almost two years after his "resignation," he could not have—and cannot now—vindicate his statutory claims in arbitration. However, as explained in more detail below, a plaintiff's failure to initiate arbitration within a reasonable and contractually agreed to limitations period does not render what was otherwise an adequate arbitral forum inadequate.

As the United States Court of Appeals for the Fourth Circuit has explained, "[a]s a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonably short." *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 287 (4th Cir. 2007) (citing *Missouri, Kan., & Tex. Ry. Co. v. Harriman Bros.*, 227 U.S. 657, 672, 33 S.Ct. 397 (1913); *Atlantic Coast Line R. Co. v. Pope*, 119 F.3d 39, 44 (4th Cir. 1941)). In *Cotton Yarn*, the court was tasked with determining whether an arbitration provision that shortened the four year federal limitations period for which to bring a claim under the Sherman Act, 15 U.S.C. § 1, to one year rendered the arbitration agreement unenforceable. Section 15b of the Clayton Act, 15 U.S.C. §§ 1 *et seq.*, establishes the four year limitations period. The court began by noting that nothing in the Clayton Act prevented the parties from contractually agreeing to a shortened limitations provision, and one year is a reasonable amount of time. Next, the court explained that § 15b, setting the four year limitations period, is procedural rather than substantive, and accordingly the one year limitations period was not inconsistent with any substantive rights. Finally, the court considered whether the one year period could prevent the plaintiffs from effectively vindicating their statutory rights.

With respect to this third factor, the court explained that the "crucial inquiry" is "'whether the particular claimant has an adequate and accessible substitute forum in which

10

to resolve his statutory rights.'" *Id.* at 290 (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)). The plaintiffs in *Cotton Yarn* argued in part that the one year limitations period could prevent them from effectively vindicating their rights because their claims *might* have been found to be untimely. On this point, the court explained, although did not hold,[3] that unlike the situation where high arbitration costs render an arbitral forum inaccessible:

> [I]t seems quite a different matter to allow a plaintiff's failure to commence an action within the reasonable contractually-established limitations period to render an otherwise adequate and appropriate arbitral forum suddenly inadequate or inaccessible. . . . To do so would be to give plaintiffs a back-door escape from the effects of their agreement to arbitrate and would be inconsistent with the strong federal policy favoring arbitration.

*Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927 (1983)). The court ended with instructions to the district court that if on remand it found plaintiffs' claims were not timely, the court must determine "in light of the concerns that we have identified above . . . whether that fact alone renders the contractual limitations period unenforceable."[4] *Id.* at 292.

Subsequently, in *Dieng v. College Park Hyundai*, No. DKC-09-0068, 2009 WL 2096076 (July 9, 2009), this Court held that an arbitration agreement's sixty or one-hundred eighty day limitations period was not substantively unconscionable. The plaintiffs argued that the

---

[3] The court noted that "[w]e need not, however, resolve this question at this point in the proceedings, because . . . the plaintiffs have failed to establish that their claims are untimely under the one year limitations provisions set forth in the arbitration agreements." *Cotton Yarn*, 505 F.3d at 290. Ultimately the court remanded the case to determine whether the claims were timely.

[4] On remand, the United States District Court for the Middle District of North Carolina found that the plaintiffs were within the one year statute of limitations due to fraudulent concealment tolling the date, and accordingly did not reach the issue of whether, had the one year limitation blocked plaintiffs' claims, it would have been unenforceable. *In re Cotton Yarn Antitrust Litig.*, No. CIV.A.1:04MD1622, 2009 WL 618252, at *4 (M.D.N.C. Mar. 6, 2009).

11

limitation was unreasonably short because it was "a drastic reduction from the otherwise applicable two and three year statutory limitation periods" under the Fair Labor Standards Act and Maryland's Wage and Hour Statute. This Court explained that the plaintiffs' argument had "been expressly rejected by the Fourth Circuit" in *Cotton Yarn*. "Consequently, given the general rule that statutory limitation periods may be shortened by contract, so long as the limitations period is not unreasonably short, Plaintiffs have not shown that the contractual limitations period is unreasonable." *Id.* (citing *Cotton Yarn*, 505 F.3d at 287).

Following the analysis set forth in *Cotton Yarn*, Plaintiff does not point to a provision in any of the statutes governing his claims that prevent parties from contractually agreeing to a shortened limitations provision, and one year is a reasonable amount of time. In fact, in *Cotton Yarn* the Fourth Circuit rejected the plaintiff's argument that one year was "patently unreasonable" because it was a "drastic reduction" from the otherwise applicable four year statutory limitations period. 505 F.3d at 288. In contrast, the Agreement in this case reduced the limitations period for Plaintiff's claims from, at the most, three years under the FMLA if a violation was willful, to one year. Accordingly, the one year period is reasonable. *Daniels v. NVR, Inc.*, 56 F.Supp.3d 737, 743 (D. Md. 2014) (citing *Cotton Yarn* for the proposition that a one year contractual limitations period is reasonable). Bracey also does not assert that the limitations period is inconsistent with any of his substantive rights under the FMLA, ADA, or Maryland's FEPA.

Turning to the final inquiry, whether the one year period could prevent Bracey from effectively vindicating his statutory rights, this Court follows the Fourth Circuit's dicta in *Cotton Yarn* and Judge Chasanow of this Court in *Dieng v. College Park Hyundai*, No. DKC-09-

0068, 2009 WL 2096076 (July 9, 2009). Bracey alleges that as early as June 23, 2015, Lancaster told him that he could no longer work light duty. Then on July 7, 2015, he received the letter "attributing the false allegations to him that he had resigned." The Agreement states that he was required to file his written notice requesting arbitration "within one year of the date that the act complained of occurred." Rather than file a request for arbitration, however, he filed a charge with the EEOC. He claims that he did this because he was required to exhaust his administrative remedies before filing suit *in this Court*. (ECF No. 22 at 3.) Accordingly, he argues that the one year limitations period is substantively unconscionable because exhausting his administrative remedies took longer than one year. However, he was not required to exhaust his administrative remedies before filing a request for arbitration. The Agreement itself does not contain any exhaustion requirements, nor does Plaintiff cite any authority for the proposition that he was required to file a charge before proceeding to arbitration.

As the Fourth Circuit explained in *Cotton Yarn*, Bracey "fail[ed] to commence an action within the reasonable contractually-established limitations period," and this Court does not find that this failure "render[s] an otherwise adequate and appropriate arbitral forum suddenly inadequate or inaccessible."[5] This is consistent with the Restatement

---

[5] Plaintiff relies on *Gadson v. SuperShuttle Intern.*, No. 10-1057, 2011 WL 1231311 (D. Md. Mar. 30, 2011), *vacated and remanded sub nom*, *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir. 2013), whereby this Court held that a one year statute of limitations in a Franchise Agreement was "unreasonably strict" as applied to the plaintiff's Fair Labor Standards Act claims. However, this decision was vacated and remanded by the Fourth Circuit because the one year limitation at issue was not in the arbitration clause but rather the Franchise Agreement itself. *Muriithi*, 712 F.3d. Accordingly, it was improper for this Court to decide that the limitation was unreasonable. *Id.*

13

(Second) of Contracts' provision on unconscionability,[6] which states "[i]f a contract or term thereof is unconscionable *at the time the contract is made* a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." Restatement (Second) of Contracts § 208 (1981) (emphasis added). At the time the contract was entered into, and at the time Plaintiff claims Lancaster Food denied him the right to work on light duty and ultimately declared his resignation, he had an adequate and accessible forum in which to resolve his statutory rights.

Bracey relatedly argues that only Lancaster benefits from the shortening of the statute of limitations. However, the one year limitations period applies to both parties. It states "[i]f Guest Services requests arbitration against [an employee] . . . [s]uch notice is subject to the same requirements as set forth in the immediately preceding paragraph," which set the one year limitation. (ECF No. 21-2.) Accordingly, the Agreement is not "so one-sided as to make it unconscionable." *Walter*, 386 Md. at 433, 872 A.2d 735.

Finally, Bracey asserts that "there is also the issue of arbitration costs which is prohibitive to Bracey." (ECF No. 22 at 4.) In *Green Tree Financial Corporation-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513 (2000), the Supreme Court stated that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." The party seeking to invalidate an arbitration provision on the ground that arbitration would be "prohibitively expensive" bears the burden of showing the likelihood of incurring such costs. *Id.* With respect to fee

---

[6] The Maryland Courts of Appeals and Maryland Court of Special Appeals have both relied on this provision of the Restatement (Second) of Contracts. *See Walther v. Sovereign Bank*, 386 Md. 412, 430, 872 A.2d 735 (Md. 2005); *see also Falls v. 1CI, Inc.*, 208 Md. App. 643, 665, 57 A.3d 521, 534 (Md. Ct. Spec. App. 2012); *Freedman v. Comcast Corp.*, 190 Md. App. 179, 208, 988 A.2d 68 (Md. Ct. Spec. App. 2010).

14

splitting provisions, the Fourth Circuit has held that they are not *per se* void but rather must be analyzed on a case-by-case basis. *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001).

Bracey asserts that it was unreasonable to expect that within one year, he would be able to retain counsel, pay $500 in arbitration fees, and also pay other related costs that "could well" amount to thousands of dollars. The Agreement provides, however, that Lancaster would pay for the arbitrator. With respect to other costs and expenses and attorneys' fees, they would be allocated as provided by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association themselves. *See* National Rules for the Resolution of Employment Disputes (Jan. 1, 2014), https://www.adr.org/sites/default/files/National%20Rules%20for%20the%20Resolution%20of%20Employment%20Disputes%20Jan%2001%2C%202004.pdf. Under these facts, Bracey "has failed to demonstrate any inability to pay the arbitration fees and costs, much less prohibitive financial hardship, to support his assertion that the fee-splitting provision deterred him from arbitrating his statutory claims." *See Bradford*, 238 F.3d at 558 (finding that the plaintiff offered no evidence he was unable to pay $4,470.88 in arbitration fees). Accordingly, the one year limitation is not substantively unconscionable, and Plaintiff Bracey is bound by the Arbitration Agreement.

Having determined that Bracey is bound by the Arbitration Agreement, the appropriate remedy is dismissal of his claims. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *see also Wheeling Hosp., Inc. v. Health Plan of the*

15

*Upper Ohio Valley, Inc.*, 683 F.3d 577, 584 (4th Cir. 2012) (quoting *Choice Hotels* for the proposition that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Owen v. CBRE, Inc.*, No. PWG-16-773, 2016 WL 7033973, at *1 n. 2 (D. Md. Dec. 2, 2016); *Thomas v. Progressive Leasing,* No. RDB-17-1249, 2017 WL 4805235 (D. Md. Oct. 25, 2017); *Bey v. Midland Credit Mgmt., Inc.*, No. GJH-15-1329, 2016 WL 1226648, at *5 (D. Md. Mar. 23, 2016)). Accordingly, Plaintiff's claims are DISMISSED.

### III. Attorneys' fees

Section one of the Arbitration Agreement provides that if either Bracey or Guest Services made a demand, request, or motion for trial by jury or a trial in any judicial form, and the other party prevailed on dismissing such demand, request, or motion, that party is entitled to the recovery of all costs, losses, and attorneys' fees. (ECF No. 21-2.) Prior to Defendant removing Plaintiff's action to this Court, counsel for Defendant wrote to Plaintiff's counsel indicating that Bracey's claims were subject to arbitration. (ECF No. 21-3.) Further, Defense counsel wrote that "[t]he Agreement also sets forth the remedies available to Guest Services, in the event that Mr. Bracey chooses to ignore the express provisions of the Agreement," including any attorneys' fees incurred to dismiss the case. (*Id.*) In the Response to the Motion to Dismiss, Plaintiff offers no reason why this Court should ignore the plain language of the Agreement and not grant Defendant's request for attorneys' fees. Under these circumstances, the Defendant is entitled to an award of reasonable attorneys' fees and costs incurred to litigate their Motion to Dismiss and Compel Arbitration. *See Robinson v. Taboo Gentlemen's Club, LLC*, No. 3:14-CV-123, 2015 WL 3868531 (N.D.W.V. June 23, 2015) (granting the defendant's request for attorneys' fees and costs for litigating

the motion to compel when provided for by the arbitration agreement). Accordingly, Defendant's Motion to Dismiss and Compel Arbitration and for Attorneys' Fees (ECF No. 21) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss and Compel Arbitration and for Attorneys' Fees (ECF No. 21) is GRANTED and Plaintiff's claims are DISMISSED.

A separate order follows.

Dated: March 30, 2018

                                            /s/

                                        Richard D. Bennett
                                        United States District Judge