# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL BRACEY, | * | |
| Plaintiff, | * | Civil Action No. RDB-17-1826 |
| v. | * | |
| LANCASTER FOODS LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

This case arises from the claim of alleged employment discrimination by Plaintiff Michael Bracey ("Plaintiff" or "Bracey") against Defendant Lancaster Foods LLC ("Defendant" or "Lancaster"). On March 30, 2018, this Court granted the Defendant's Motion to Dismiss and Compel Arbitration and dismissed Plaintiff's Complaint. (ECF Nos. 30, 31.) Now pending before this Court is Defendant's Motion for Attorneys' Fees and Costs (ECF No. 32); and Plaintiff's Motion for Reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (ECF No. 33). The submission has been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Plaintiff's Motion for Reconsideration (ECF No. 33) is DENIED. This Court will STAY Defendant's Motion for Attorneys' Fees and Costs (ECF No. 32) pending the resolution of this case on appeal.

## BACKGROUND

The facts of this case have been previously discussed in a Memorandum Opinion of this Court and are briefly addressed herein. *Bracey v. Lancaster Foods, LLC*, RDB-17-1826, 2018

1

WL 1570239 (D. Md. March 30, 2018). This case concerns Lancaster's alleged violations of the American Disabilities Act Amendments Act of 2008 ("ADAAA"), the Family Medical Leave Act ("FMLA"), and the Maryland Fair Employment Practices Act ("MFEPA"). In his Amended Complaint, Bracey alleges that he began working for Lancaster in 2008 as a Commercial Driver's License (CDL) Class "A" Driver. (ECF No. 17, at 1.) Prior to being hired by Lancaster, Bracey entered into an arbitration agreement with the company (the "Agreement"). (*Id.* at ¶ 71.) Bracey alleges that he became a Yard Jockey in 2010, a job position which the Amended Complaint vaguely describes as "requir[ing] him to move products from the warehouse to other locations." (*Id.* at 1.)

On August 11, 2014, while employed as a Yard Jockey, Bracey suffered a work-related injury to his leg. (ECF No. 17 at ¶¶ 11-12.) Bracey returned to work on February 15, 2015 on light duty after undergoing surgeries and physical therapy over a period of six months. (*Id.* at ¶ 15.) In late March, he resumed physical therapy. (*Id.* at ¶ 16.) Bracey was then discharged by his physical therapists on May 19, 2015 "at the Medium Physical Demand Category limiting his ability to lift weights that were more than 37-57 pounds." (*Id.* at ¶ 18.) The next day Bracey's personal physician, Dr. Greg Osgood, M.D., recommended that he continue to work on light duty for an additional six months, determining that he had trauma arthritis in his arm. (*Id.* at ¶ 21.) On June 9, 2015, an independent medical examiner evaluated Bracey and released him to "full duty without restrictions." (*Id.* at ¶ 27.) Bracey, however, continued to follow Dr. Osgood's recommendation and work light duty. (*Id.* at ¶ 30.)

Later that month, in a letter dated June 18, 2015 and received by Bracey on June 23, 2015, Lancaster's safety manager informed Bracey that Lancaster had received the

independent medical examiner's report, and unless the company heard back from him by June 26, 2015, the company would consider him to have resigned. (*Id.* at ¶ 32.) On June 23, Bracey contacted the Director of Human Resources, who told him that he was to return to work "without restrictions or risk being resigned." (*Id.* at ¶ 33.) Bracey reported to work but continued to insist that he could not work full duty. (*Id.* at ¶¶ 51, 52.) He alleges that he requested meetings with Lancaster employees to discuss his accommodations and light duty requests, but Lancaster did not afford him these meetings. (*Id.* at ¶ 39, 42, 57.) On June 26, 2015, Bracey received another letter from Lancaster which again threatened that he would be "deemed resigned" if he did not report to work ready for full duty. (*Id.* at ¶ 49.) Having not complied with Lancaster's directions, on July 7, 2015, he received a letter from Lancaster foods which indicated that he had resigned. (*Id.* at ¶ 61.) Bracey disputes this representation. (*Id.*)

Some five months later, on or about December 12, 2015, Bracey filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 67.) Over a year later, he ultimately received a Right to Sue letter on February 5, 2017. (*Id.* at ¶ 7.) On April 28, 2017, Plaintiff commenced this lawsuit in the Circuit Court for Anne Arundel County alleging interference and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C §§ 2601, *et seq.* (Counts I, II); discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act Amendments Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Counts III-V); disability discrimination, wrongful discharge, failure to accommodate, and disability retaliation under the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't § 20-266(a) (Count VI-VIII); and breach of the contract of good faith and fair dealing (Count IX). On June 30, 2017, Defendant removed the action to this Court based on

federal question jurisdiction, pursuant to 28 U.S.C. § 1331.

On July 11, 2017, Defendant filed a Motion to Dismiss and Compel Arbitration on the ground that Plaintiff had signed an Arbitration Agreement. (ECF No. 10.) Plaintiff then moved to stay the proceedings pending the receipt of files and other documents from the EEOC, which this Court granted. (ECF Nos. 11, 13.) After receiving the file, on November 17, 2017, Plaintiff filed an Amended Complaint. (ECF No. 17.) On December 4, 2017, Defendant filed a Motion to Dismiss and Compel Arbitration. (ECF No. 21.) In response, Bracey argued that the arbitration agreement was unconscionable because it effectively shortened the applicable limitations period by requiring him to submit an arbitration request to his employer within one year of the conduct giving rise to his claim. (ECF No. 22.) On March 30, 2018, this Court granted the Defendant's Motion to Dismiss and Compel Arbitration, finding that the arbitration agreement was neither procedurally nor substantively unconscionable. On April 13, 2018, Lancaster filed the pending Motion for Attorney's Fees and Costs. Subsequently, Plaintiff filed the instant Motion for Reconsideration under FRCP 60 on April 26, 2018. In the Motion, Plaintiff claims that he has discovered new evidence which purportedly reveals that he is exempt from arbitration because, as a truck driver employed to ship goods in interstate commerce, he is exempt from arbitration under Section 1 of the Federal Arbitration Act ("FAA"). This is an entirely novel legal argument; Bracey did not allege that he was engaged in interstate commerce in the Amended Complaint and did not argue that he fit this exception in response to Lancaster's Motion to Dismiss. On April 27, 2018 Bracey appealed this case to the United States Court of Appeals for the Fourth Circuit. (ECF No. 35.)

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration." Instead, Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, and Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). As this Court explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

(footnote omitted). Although Bracey seeks relief pursuant to Rule 60(b), he notes that he has filed his Motion within twenty-eight (28) days of this Court's Order granting Defendant's Motion to Dismiss. (ECF No. 33, at 1.) Accordingly, Rule 59(e) governs this Court's analysis. *See, e.g., Knott v. Wedgwood*, DKC-13-2486, 2014 WL 4660811, at *2 (D. Md. Sept. 11, 2014) ("Although Plaintiff purports to bring his motion for reconsideration under Rule 60(b)(1), because it was filed within twenty-eight days of entry of the underlying order, it is properly analyzed under Rule 59(e).")

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment[1] may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

---

[1] Rule 59(e) applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991).

available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *see also Fleming v. Maryland National Capital Park & Panning Commission*, DKC-11-2769, 2012 WL 12877387, at *1 (D. Md. Mar. 8, 2012). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kelly v. Simpson*, RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017). Moreover, "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment." *Fleming*, 2012 WL 12877387, at *1.

## ANALYSIS

### I. Plaintiff's Motion for Reconsideration is DENIED.

In a prior Memorandum Opinion and Order this Court granted Defendant's Motion to Dismiss and Compel Arbitration, citing the requirements of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* The United States Supreme Court has explained that the FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983). Section 1 of the FAA presents a narrow exception to the Act's pro-arbitration policy. Under this Section, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from arbitration under the FAA. 9 U.S.C. § 1. Only "workers actually involved in the interstate transportation of goods" fit this exception. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 505 (4th Cir. 2002) (quoting *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997).

Plaintiff petitions this Court to vacate its prior Order granting Defendant's Motion to Dismiss and Compel Arbitration, arguing that newly discovered evidence reveals that he is exempt from application of the FAA because his job duties as a Yard Jockey included occasional trips across state lines. Neither Bracey's Original Complaint nor his Amended Complaint alleged that he was an interstate transportation worker or that he fit this exception. To support this contention, Bracey has produced travel logs which he claims to have located after this Court granted Defendant's Motion to Dismiss. Offering no explanation for his failure to allege or argue that he was an interstate transportation exempt from the provisions of the FAA, Bracey faults Lancaster for misrepresenting the nature of his job duties during earlier proceedings. This Court will not vacate its prior Order on these grounds. As explained below, the travel logs Bracey submits to this Court do not constitute "newly discovered" evidence because Bracey acknowledges that they were in his possession throughout these proceedings. Furthermore, Lancaster's failure to correct Bracey's representations about his own job duties does not amount to misconduct.

### A. Bracey's travel logs do not constitute new evidence.

This Court applies the same standard to both Rule 59(e) and 60(b) Motions seeking relief from judgment based on the discovery of new evidence. *See Boryan v. United States*, 884 F.3d 767, 771 (4th Cir. 1989). The moving party must demonstrate:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Id.*; As Judge Hollander of this Court has noted, a "party must produce a 'legitimate

justification for not presenting' the evidence during the earlier proceeding." *Burgess v. System High Corporation*, ELH-14-3895, 2016 WL 1028022, at *9 (D. Md. March 14, 2016) (quoting *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996))).

In this case, Plaintiff explains that he did not provide the travel logs earlier in these proceedings because he only recently discovered them on a USB drive which he did not locate until April 2018. (ECF No. 42, at 6.) As Bracey acknowledges, the logs attached his Motion indicate that they were printed in 2013. (*Id.* at 7.) He candidly admits that he "used to request these logs from my supervisor who then printed them out and then provided them to me." (ECF No. 38, at 10.) Bracey's own representations reveal that the logs are not "newly discovered" at all, but rather rested in Bracey's possession throughout this litigation. Moreover, as Bracey was personally aware of the travel he performed for Lancaster, he could have alleged and argued that he was engaged in interstate travel. He failed to do so. As Bracey has not provided any valid justification for withholding this information until this late hour, this Court need not vacate its prior Order to Compel Arbitration.

### B. Lancaster has not engaged in Misconduct.

Unable to explain why he withheld this crucial information until this late stage, Bracey pins the blame on Lancaster. He argues that Lancaster engaged in a "pattern of repeated deceit" by arguing earlier in these proceedings that Bracey did not fit the FAA's transportation worker exception because he was a Yard Jockey "responsible only for moving trucks . . . . around a parking lot." (ECF No. 33, at 4 n.4, 8; ECF No. 25, at 2-3.) He additionally accuses Lancaster of violating Rule 11 of the Federal Rules of Civil Procedure by making false claims about the nature and extent of Bracey's job duties. (ECF No. 42, at 2 n.3, 5, 6, 9.) Lancaster

responds that its representations were based on Bracey's own Original and Amended Complaints, which alleged that he was a Yard Jockey, a position which does not require interstate travel, and omitted any reference to interstate travel in his pleadings. (ECF No. 38, at 8.)

Bracey grounds his arguments in Rule 60(b)(3), which permits district courts to grant relief from a prior judgment upon a showing of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." To prevail under this provision, "[t]he moving party must (1) have a meritorious defense; (2) prove misconduct by clear and convincing evidence; and (3) show that the misconduct prevented the moving party from fully presenting his case." *Turnell v. Ford Motor Co.*, 245 F. App'x 283, 288 (4th Cir. 2007). Rule 59(e), the rule which governs Bracey's Motion, does not explicitly permit relief on this basis. Nonetheless, Bracey has neither demonstrated entitlement to relief under Rule 59(e) nor Rule 60(b) because Lancaster did not engage in any misconduct.

In this case, Lancaster did not engage in misconduct by responding to the arguments and allegations Bracey made in his pleadings. Bracey was free to allege and argue that he was a transportation worker engaged in interstate commerce, but did not do so. Instead, he alleged that he started working for Lancaster as a Driver and then became a "Yard Jockey," a job which allegedly required him to "move products from the warehouse to other locations." (ECF No. 17, at 1.) Based on this representation, Lancaster explained that Bracey "was responsible only for maneuvering trucks in the yard at Lancaster." (ECF No. 25, at 2.) This representation is supported by the Declaration of Jack Sriber, the Director of Transportation at Lancaster Foods. (ECF No. 38-1, at ¶ 6.) In his declaration, Scribner explains that Yard

Jockeys are responsible for "maneuvering tractor-trailers around the parking areas and grounds of Lancaster Foods . . . and occasionally driving of tractor-trailers within Maryland to regional locations around Baltimore and Southern Maryland, for example." (*Id.*) Based on this understanding, Lancaster argued that Section 1 of the FAA did not exempt Bracey from arbitration—an issue that Bracey had raised in email exchanges with Defense counsel. In that email, Bracey's attorney argued that Lancaster Foods was engaged in interstate transportation, but did not assert that Bracey himself was an interstate transportation worker. (ECF No. 38-2, at 1-2.) Bracey's Response to Lancaster's Motion to Dismiss dropped the issue entirely, arguing only that the arbitration agreement was unenforceable because it violated public policy. (ECF No. 22, at 2.) Only after this Court dismissed his claims has Bracey introduced travel logs which show that he traversed Maryland state lines a total of four times between January 1, 2014 and August 11, 2014. (ECF No. 38-1, at ¶ 15; ECF No. 38-3.) Under these circumstances, Lancaster and its lawyers did not engage in any misconduct because they did not have a duty to contradict the assertions contained in Bracey's own pleadings to support an argument he did not present to this Court.

More importantly, the evidence Bracey presents would *not* have changed the outcome of these proceedings because his minimal interstate travel does not render him an interstate transportation worker under Section 1 of the FAA. Bracey admits that he is "unsure how many times a driver has to drive[] out of state to be considered an interstate transportation worker" under Section 1 of the FAA. (ECF No. 42, at 4 n.8.) Without citation to analogous case law, Lancaster suggests that Bracey cannot fit the exception because he drove across state lines only a handful of times. (ECF No. 38, at 2.)

Furthermore, this Court is mindful of the Fourth Circuit's admonishment to construe narrowly Section 1 of the FAA in light of the FAA's "well-established, broad preference in favor of arbitration." *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 504 (4th Cir. 2002). As the Fourth Circuit has explained, an employee's interstate transportation activities must be more than occasional to fit the exception. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 504-05 (4th Cir. 2002). In *Adkins*, plaintiff-employees who were engaged in "construction, landscaping, warehousing, catering, moving, hotel, stevedoring, [and] light industrial markets" argued that they Section 1's exception because they were "occasionally assigned" to assist clients in the transportation industry. *Id.* at 505. While acknowledging that their work "could be construed as including work related to the interstate transportation of goods," the Fourth Circuit determined that the employees did not fit Section 1's exception because plaintiffs failed to demonstrate that "a majority or even a plurality" of their job assignments involved supporting these industries. *Id.* In light of the narrow construction which Section 1 must be afforded, the Court held that the provision did not embrace the *Adkins* plaintiffs.

In this case, the record, as supplemented by evidence first presented to this Court after issuing its Order, reflects that Bracey primarily engaged in local driving activity involving the movement of items around Lancaster's parking lot. While Bracey was required to cross state lines four times in a period of seven months, this fleeting connection to interstate commerce does not allow him to avoid arbitration under Section 1. Like the plaintiffs in *Adkins*, Bracey was only "occasionally" involved in interstate transport. Accordingly, even if Bracey's evidence were acceptable at this stage—and it is not—it would not require this Court to vacate its Order.

11

## II. Defendant's Motion for Attorneys' Fees and Costs is Stayed.

Pursuant to the Arbitration Agreement, if either party "made a demand, request, or *motion for* trial by jury or a trial in any judicial form, and the other party prevailed on dismissing such demand, request, or motion, that party is entitled to recovery of all costs, losses, and attorneys' fees." In a prior Order, this Court granted Defendant's Motion to Dismiss and Compel Arbitration and awarded Lancaster the reasonable attorneys' fees and costs incurred to litigate the Motion. (ECF Nos. 30, 31.) Now pending is Lancaster's Motion for Attorneys' Fees and Costs, which seeks $18,719.01. (ECF No. 32.)

This Court will stay the pending Motion for Attorneys' Fees and Costs because Plaintiff has appealed this Court's Order granting the Motion to Dismiss. The United States Supreme Court has long held that the "power to stay proceedings is incidental to the power inherent in every court" to control its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 245–55, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *see also Williford v. Armstrong World Indus. Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (holding that courts possess the inherent power to stay an action to ensure the "efficient management of their dockets"). This Court may exercise this power *sua sponte* to hold in abeyance motions for attorneys' fees pending the resolution of an appeal. *Macsherry v. Sparrows Point, LLC*, 1:15CV22 (STAMP), 2019 WL 557005, at *11-12 (D. Md. Feb. 12, 2019) (holding the prevailing plaintiff's motion for attorneys' fees and costs in abeyance pending the resolution of a possible appeal of the underlying jury verdict).

Pursuant to its inherent power, this Court will hold in abeyance Defendant's Motion for Attorneys' Fees and Costs (ECF No. 32) awaiting the resolution of the pending appeal in

this action. An examination of the documents mustered in support of Defendant's request for fees and costs would require the expenditure of significant judicial resources. A successful appeal before the United States Court of Appeals for the Fourth Circuit would render these efforts futile or may require this Court to amend its ruling.

For these reasons, IT IS HEREBY ORDERED this 12th day of March, 2019, that:

1. Plaintiff's Motion for Reconsideration (ECF No. 33) is DENIED;

2. Defendant's Motion for Attorneys' Fees and Costs (ECF No. 32) is STAYED pending resolution of Plaintiff's appeal to the United States Court of Appeals for the Fourth Circuit; and

3. The Clerk of the Court transmit a copy of this Memorandum Order to the Plaintiff and counsel.

*/s/ Richard D. Bennett*

Richard D. Bennett
United States District Judge